IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BERNARD LEWIS.,

    Plaintiff,

v.                                                     Case No.    8:20-cv-02885

PHH MORTGAGE CORPORATION

    Defendant.

## CLASS ACTION COMPLAINT AND JURY DEMAND

The Plaintiff, Bernard Lewis, by and through undersigned counsel, files suit against Defendant PHH Mortgage Corporation ("PHH"), and alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages, costs and attorney's fees brought pursuant to Federal Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), Truth In Lending Act, 15 U.S.C. § 1601 ("TILA"), Real Estate Settlement Procedures Act, 12 U.S.C. §2605 ("RESPA"), Maryland Consumer Debt Collection Act, Md. Code, Com Law § 14-201 ("MCDCA"), Maryland Consumer Protection Act, Md. Code, Com Law § 13-101 ("MCPA") and Maryland Mortgage Fraud Protection Act, Md. Code, Com Law § 7-401 ("MMFPA").

### JURISDICTION & VENUE

2.    This Court has jurisdiction and venue of the matters asserted herein. More specifically, jurisdiction is appropriate for the following reasons: (a) On the basis of diversity of citizenship and in light of the amount in controversy is in excess of $75,000 exclusive of costs. See 28 U.S.C. §1332; (b) The matters asserted herein present a mix of federal and state questions. See 28 U.S.C. §§ 1331 & 1367; and (c) Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) for Plaintiff resides in this District and the conduct complained of occurred in this District.

## PARTIES TO THIS ACTION

3. Bernard Lewis is a natural person who resides in the state of Maryland.

4. PHH is a loan servicer that collect on loans in default to lenders.

## FACTUAL ALLEGATIONS

5. In December 2004, Mr. Lewis obtained a mortgage loan from Ameriquest Mortgage Company for his personal residence.

6. Ocwen Loan Servicing, LLC ("Ocwen") claimed to have acquired servicing rights in the loan and declared the loan in default.

7. PHH claimed to have acquired the loan servicing rights from Ocwen in April 2019.

8. PHH's initial communication to Mr. Lewis was a loss mitigation correspondence that provided information on avoiding losing his home and threatened to invoke foreclosure and further threatened to report derogatory information to the credit bureaus.

9. In its next communication, PHH apprised Mr. Lewis of his right to dispute the debt but demanded payment without apprising Mr. Lewis that if he disputed the debt, he did not need to make payment until after PHH verified the debt.

10. PHH's initial communication identified an entity, AMSI 2005-R1, as the current creditor but AMSI 2005-R1 does not exist and is not the current creditor of Mr. Lewis' loan.

11. PHH also stated the debt amount owed was $587,238.27 but failed to state that the amount of debt older than three years old was not collectible in court.

12. Further, in this communication, PHH falsely represented that it would report information regarding Mr. Lewis' account to his credit reports.

13. Shortly thereafter, PHH sent another loss mitigation letter that provided information on foreclosure alternatives and threatened to report information about the loan to credit bureaus.

14. PHH sent a mortgage statement in July 2019 that falsely represented foreclosure proceedings would begin. Further, in this mortgage statement, PHH overstated the debt amount by at least $30,000 and failed to disclose that a large portion of the debt amount (older than 3-years old) was outside of the statute of limitation and not collectible in court.

15. In numerous written communications, PHH used the name or identity of NewRez.

16. Using the name NewRez, PHH sent a mortgage statement in August 2019 that falsely represented foreclosure proceedings would begin. Further, in this mortgage statement, PHH overstated the debt amount by at least $30,000 and failed to disclose that a large portion of the debt amount was outside of the statute of limitation and not collectible in court. In this communication, PHH threatened to report derogatory information about Mr. Lewis' loan to the credit bureaus.

17. In August 2019, PHH, under the name NewRez, issued a Notice of Intent to Foreclose ("NOI") that represented it could accelerate the loan, begin foreclosure and terminate Mr. Lewis' ownership of the property immediately after September 20, 2019.

18. PHH's representation was false because PHH could not begin foreclosure proceedings until September 30, 2019.

19. PHH further represented in the NOI that it may report derogatory information (i.e. late payments, missed payments, or other defaults) about Mr. Lewis' account to the credit bureaus.

20. In September 2019, PHH, using the name NewRez, sent more correspondence threatening to invoke foreclosure and to report derogatory information to the credit bureaus.

21. PHH also sent another mortgage statement in September 2019 using the name NewRez, wherein PHH again falsely represented foreclosure proceedings would begin, overstated the debt amount by at least $30,000, failed to disclose that a large portion of the debt amount was outside of the statute of limitation and not collectible in court, and threatened to report derogatory information about Mr. Lewis' loan to the credit bureaus.

22. In October 2019, PHH sent another mortgage statement using the name NewRez, wherein it falsely represented foreclosure proceedings would begin, overstated the debt amount by at least $30,000, failed to disclose that a large portion of the debt amount was outside of the statute of limitation and not collectible in court, and threatened to report derogatory information about Mr. Lewis' loan to the credit bureaus.

23. PHH failed to send mortgage statements in November and December of 2019.

24. By letter dated December 2019, Mr. Lewis requested information on the servicing of the loan, the identity of the loan owner, chain of title for the Note and Deed of Trust, custody of the Note, certified true and accurate copy of the Note, information on the legal existence of the original lender, information on the legal existence of the current owner, and a copy of the pooling and servicing agreement.

25. By letter dated December 2019, Mr. Lewis also requested PHH make certain corrections to the account, including the removal of all foreclosure related fees and costs that were related to the unlawful foreclosures that were dismissed, and removal of the $30,000 inflated debt amount that was added sometime during the time PHH purported acquired the loan from Ocwen.

26. PHH did not respond to Mr. Lewis' letters.

27. PHH did not send a mortgage statement in January and February of 2020.

28. By letter dated February 2020, Mr. Lewis notified PHH that he had not received a response to his December 2019 letters and request the same information and corrections to the account that he made in the December 2019 letters.

29. PHH, using the name NewRez, responded to the letters Mr. Lewis sent in December 2019. In its response, PHH failed to provide a certified true and accurate copy of the Note, failed to identify the loan owner, failed to provide a chain of title for the Note and Deed of Trust, failed to provide a certified true and accurate copy of the Note, failed to provide information on the legal

4

existence of the original lender, failed to provide information on the legal existence of the current owner, and failed to provide a copy of the pooling and servicing agreement.

30. PHH further failed to make the requested corrections to the account. Instead of correcting the account or providing its reasons for not correcting the account, PHH demanded Mr. Lewis pay an amount that included the illegal foreclosure fees and inflated $30,000 amount.

31. PHH also represented that a foreclosure action was already underway.

32. On February 19, 2020, PHH under the false guise of NewRez, sent loss mitigation correspondence that falsely represented foreclosure proceedings had begun and threatened to report negative information regarding the loan to the credit bureaus. In this communication, PHH demanded that Mr. Lewis reinstate the debt but did not disclose a portion of the debt was outside the statute of limitation and the full amount demanded to reinstate the loan was not enforceable in court.

33. PHH referred the loan to McCabe, Weisberg & Conway ("MWC") and executed a Substitution of Trustee on June 3, 2020.

34. The Substitution of Trustee did not appoint MWC's attorneys as substitute trustees because PHH was not lender or holder of the Note, nor was PHH an agent to the lender or holder.

35. On June 22, 2020, attorneys for MWC filed a foreclosure order to docket.

36. Upon information and belief, PHH instructed MWC to file the order to docket.

37. The foreclosure was filed illegally because MWC had no authority to file it.

38. PHH did not send mortgage statements for March, April, May, June and July 2020.

39. In August 2020, PHH sent a mortgage statement under the name Newrez and although PHH caused a foreclosure order to docket to be filed on June 22, 2020, PHH represented to Mr. Lewis that no foreclosure had been filed. Further, PHH represented that Mr. Lewis had been accepted for a loan modification.[1]

---

[1] In or around August 2018, Mr. Lewis submitted a complete loss mitigation application.

5

40. As in PHH's prior mortgage statements and other communications, PHH demanded payment in an amount that was inflated by $30,000 and further inflated with illegal foreclosure related fees and costs. Additionally, PHH did not inform Mr. Lewis that that the total debt amount was not enforceable in court.

### **COUNT ONE: VIOLATION(S) OF FDCPA**

41. Plaintiff incorporates the preceding allegations by reference.

42. Within one year of this action, PHH violated 15 U.S.C. § 1692e(14) by using the name NewRez (see paragraphs 15-17, 20-22, 29, 32 & 39 supra), which is not its true name.

43. Within one year of this action, PHH violated 15 U.S.C. § 1692e(2) by attempting to collect an inflated debt amount (see paragraphs 14, 16, 21, 22, 25, 30 & 40 supra).

44. Within one year of this action, PHH violated 15 U.S.C. § 1692f(1) by attempting to collect fees that were not authorized or lawful (see paragraphs 14, 16, 21, 22, 25, 30 & 40 supra).

45. Within one year of this action, PHH violated 15 U.S.C. § 1692e(2) by falsely representing the loan was not in foreclosure when a foreclosure had been filed (see para 39 supra).

46. Within one year of this action, PHH violated 15 U.S.C. § 1692e(5) by causing a foreclosure to be filed when PHH had no legal right to do so (see paragraphs 33-37).

47. Alternatively, within one year of this action, PHH violated 15 U.S.C. 1692f(6) by causing a foreclosure to be filed when PHH had no legal right to do so (see paragraphs 33-37).

48. Within one year of this action, PHH violated 15 U.S.C. § 1692e(5) by threatening that a foreclosure action was imminent when PHH had no intention to file a foreclosure action at that time (see paragraphs 8, 14, 16 & 20-22 supra).

49. Alternatively, within one year of this action, PHH violated 15 U.S.C. § 1692f(6) by threatening that a foreclosure action was imminent when PHH had no intention to file a foreclosure action at that time (see paragraphs 8, 14, 16 & 20-22 supra).

50.     Within one year of this action, PHH violated 15 U.S.C. § 1692e(10) by attempting to collect on the debt via an illegal foreclosure (see paragraphs 8, 20-22 & 33-37).

51.     Within one year of this action, PHH violated 15 U.S.C. § 1692e(2) by falsely representing the character and status of the debt thru its filing of a foreclosure order to docket when the character and status of the debt did not permit PHH to file foreclosure (see paragraphs 33-37).

52.     Within one year of this action, PHH violated 15 U.S.C. § 1692e(8) by threatening to report derogatory information about the debt to the credit bureaus (see paragraphs 8, 12, 13, 16, 19, 20-22 & 32 supra). PHH had no right to report derogatory information to the credit bureaus because the debt was older than sever years old and PHH had no intention of reporting the debt as the debt has not been reported to the credit bureaus for several years.

53.     Within one year of this action, PHH violated 15 U.S.C. § 1692e(10) by falsely representing that it would report derogatory information about the debt to the credit bureaus as a deceptive method to cause Plaintiff to make a payment (see ¶¶ 8, 12, 13, 16, 19, 20-22 & 32).

54.     Within one year of this action, PHH violated 15 U.S.C. §§ 1692e(2), 1692e(10) and 1692f by falsely and unfairly representing or inferring that PHH could judicially enforce a portion of the debt that was older than three-years old (see paragraphs 11, 14, 16, 21, 22 & 32).

55.     Within one year of this action, PHH violated 15 U.S.C. §§ 1692e(2) and 1692e(10) falsely representing the status of the debt as in foreclosure when no foreclosure action had been filed when demanding payment from Plaintiff (see paragraphs 31 & 32).

56.     Within one year of this action, PHH violated 15 U.S.C. §§ 1692g(a) and 1692e(10) by contradicting and/or overshadowing the Plaintiff's right to dispute the debt, by failing to identify the creditor of the loan (see paragraphs 9-10).

57.     As a result of Defendants' foregoing violations, Plaintiff suffered actual damages, including damage to credit, and mental and emotional distress.

58.     Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages, including assessment of undue and illegal charges, fear of erroneous and derogatory information being reported to his credit reports, fear of being foreclosed on and other mental and emotional distress, pursuant to § 1692k(a)(1), liable for statutory damages to Plaintiff in an amount of $100 - $1,000 pursuant to § 1692k(a)(2)(A), and reasonable attorney's fees pursuant to § 1692k(a)(3).

## COUNT TWO: VIOLATION(S) OF MCDCA

59.     Plaintiff incorporates the preceding allegations by reference.

60.     Defendant violated Com Law § 14-202(11) by its actions described in ¶¶ 42-56.

61.     Defendant violated Com Law § 14-202(8) by its actions described infra ¶¶ 62-67

62.     Defendant knows that AMSI 2005-R1 is not a legal entity and has no interest in the Plaintiff's mortgage loan.

63.     Because PHH knew AMSI 2005-R1 was not a legal entity, PHH knew that AMSI 2005-R1 was not a "holder" of the Note and had no interest in the deed of trust.

64.     And as the purported servicer of the mortgage loan, PHH knows that Deutsche Bank National Trust Company, the purported trustee for the legally nonexistent trust, is not actively managing Plaintiff's mortgage loan and has no real and substantial interest in the loan.

65.     PHH knows that Deutsche Bank and AMSI 2005-R1 could not appoint a substitute trustee for Plaintiff's deed of trust.

66.     PHH knows it filed a Substitution of Trustee on behalf of Deutsche Bank, as Trustee for AMSI 2005-R1 had no legal effect and did not legally appoint Laura H.G. O'Sullivan, Michael T. Cantrell and Erin M. Shaffer as substitute trustees for Plaintiff's deed of trust.

67.     Despite knowing that it did not legally appoint new substitute trustees, PHH instructed them to file a foreclosure action against the Plaintiff.

68.     Defendant's foregoing violations caused the Plaintiff to suffer actual damages, including assessment of undue and illegal charges, fear of erroneous and derogatory information being reported to his credit reports, fear of being foreclosed on and other mental and emotional distress, rendering Defendant liable for actual damages pursuant to MCDCA, Com Law § 14-203.

### COUNT THREE: VIOLATION(S) OF MCPA

69.     Plaintiff incorporates the preceding allegations by reference.

70.     Defendants violated the MCDCA, Md. Code Ann., Com Law § 13-301(14)(iii) contemporaneously with their violations of the MCDCA, Com Law at §§ 14-202(8) and 14-202(11).

71.     PHH violated MCPA, Com Law § 13-316(c) by failing to adequately and/or timely respond to Plaintiff's inquiries.

72.     Defendant's foregoing violations caused the Plaintiff to suffer actual damages, including assessment of undue and illegal charges, fear of erroneous and derogatory information being reported to his credit reports, fear of being foreclosed on and other mental and emotional distress, rendering Defendant liable for actual damages pursuant to the MCPA at § 13-408(a), and for attorney's fees pursuant to MCPA, § 13-408(b).

### COUNT FOUR: VIOLATION(S) OF MMFPA

73.     Plaintiff incorporates the preceding allegations by reference.

74.     Defendant committed Mortgage Fraud and violated Md. Code Ann., Real Prop. §§ 7-401(d)(1)-(3) and 7-402 by knowingly making, as alleged in paragraphs 46-51, 55, 66 & 67 herein, deliberate misrepresentations regarding its' right to foreclose.

75.     Defendant committed Mortgage Fraud and violated Md. Code Ann., Real Prop. §§ 7-401(d)(1)-(3) and 7-402 by knowingly making, as alleged in paragraphs 52 & 53 herein, deliberate misrepresentations regarding its' right to report the debt to a credit reporting agency.

76. Defendants committed Mortgage Fraud and violated Md. Code Ann., Real Prop. §§ 7-401(d)(1)-(3) and 7-402 by knowingly making, as alleged in paragraphs 43, 44 & 54 herein, deliberate misrepresentations regarding the amount it could collect on the debt.

77. Upon information and belief, the Defendant has engaged in a Pattern of Mortgage Fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission as that which was committed by Defendant against the Plaintiff as described herein.

78. Defendants' violations caused the Plaintiff to suffer actual damages, including assessment of undue and illegal charges, fear of erroneous and derogatory information being reported to his credit reports, fear of being foreclosed on and other mental and emotional distress in an amount to be determined pursuant to the MCPA at § 13-408(a), and for attorney's fees pursuant to the MMFPA at §7-406(c), and for attorney's fees pursuant to MCPA, §7-406(b).

## COUNT FIVE: VIOLATION(S) OF TILA

79. Plaintiff incorporates paragraphs 1 – 40 by reference.

80. Within one year of this action, PHH violated TILA, 15 U.S.C. § 1641(f)(2) by failing to provide all required contact information for the owner of the loan after Plaintiff made a request for that information (see paragraphs 24-29).

81. As a result of the aforesaid section 1641(f)(2) violation, the Plaintiff was not apprised of the current owner of the debt and therefore, he could not research whether the collection efforts and subsequent foreclosure action is legal and he could not research what loan alternatives the true owner offers. Consequently, Plaintiff suffered frustration and other emotional and mental distress.

82. Within one year of this action, PHH violated TILA, 15 U.S.C. §1638f by failing to transmit periodic mortgage statements to the Plaintiff (see paragraph 23, 27 & 38 supra).

83. As a result of the aforesaid section 1638f violation, the Plaintiff was not apprised of the current debt amount and current status – foreclosure or loan modification – and experienced frustration and other emotional and mental distress.

84. Within one year of this action, PHH violated TILA, 15 U.S.C. § 1638f by providing false information within its periodic mortgage statements to Plaintiff (see ¶¶ 14, 16, 21, 22, 39-40).

85. As a result of the aforesaid section 1638f violation, the Plaintiff was overcharged tens of thousands of dollars and hampered Plaintiff's ability to resolve the debt.

86. Plaintiff is entitled actual damages including emotional distress damages and pecuniary costs pursuant to § 1640(a)(1); statutory damages in the amount of $400 to $4,000 pursuant to §1640(a)(2)(A)(iv); and reasonable attorneys' fees and costs pursuant to § 1640(a)(3).

## COUNT SIX: VIOLATIONS OF RESPA

87. Plaintiff incorporates paragraphs 1 – 40 by reference.

88. Plaintiff's letters contained his name and account number, was written on a piece of paper that was not from PHH, was addressed to Bayview's designated location for receiving qualified written requests ("QWR"), notice of errors ("NOE") and requests for information ("RFI"), pertained to the loan or the servicing of the loan, and notified PHH of an error on the account and/or requested PHH provide certain information concerning the loan.

89. PHH violated 12 U.S.C. §§ 2605(e)(1)-(2) by failing to timely acknowledge Plaintiff's written inquiries and failing to timely take appropriate action – including conducting a reasonable investigation of Plaintiff's inquiry and correcting any errors that were reasonably discoverable, and/or failing to provide Plaintiff with his requested information or an explanation of why the information was not available (see paragraphs 24-26).

90. Upon information and belief, Defendant's foregoing violation(s) is/are the result of a uniform corporate policy for responding to written inquiries and the Defendant has committed similar violations to other borrowers of loans to which Defendant is the loan servicer.

91. PHH violated § 2605(f) by failing to provide information requested in Plaintiff's RFI on the false premise that the requested information was confidential or proprietary – the requests were not because they did not seek information on the management or profitability of the servicer, personnel information of the servicer, reports or audits or company investigations, and privileged (see paragraph 29 supra). See 12 C.F.R. § 1024.36(f)(1)(ii).

92. Upon information and belief, Defendant's foregoing violation(s) is/are the result of a uniform corporate policy for responding to written inquiries and the Defendant has committed similar violations to other borrowers of loans to which Defendant is the loan servicer.

93. PHH violated § 2605(f) by actively pursuing foreclosure while simultaneously considering Plaintiff for a loan modification (see paragraph 39). See C.F.R. §§ 1024.41(f),(g).

94. Upon information and belief, Defendant did not commit a mistake but intentionally initiated and pursued foreclosure while Plaintiff's loan was in the process of being modified or considered to be modified and the Defendant has committed similar violations to other borrowers of loans to which Defendant is the loan servicer

95. PHH violated § 2605(e)(1) by failing to correct the account errors identified by Plaintiff and failing to provide an explanation or reason for why it believed the account errors identified by Plaintiff were not errors and that the account was correct. (see paragraph 30 supra).

96. Upon information and belief, Defendant's foregoing violation(s) is/are the result of a uniform corporate policy to never make corrections to accounts that have been overcharged and the Defendant has committed similar violations to other borrowers of loans to which it services.

97. PHH violated § 2605(k)(d) by failing to provide the identity and contact information of the owner of Plaintiff's loan (see paragraphs 24-29).

98. Upon information and belief, Defendant's foregoing violation(s) is/are the result of a uniform corporate policy for responding to written inquiries and it has committed similar violations to other borrowers of loans to which Defendant is the loan servicer.

99. Defendant's multiple violations with respect to Plaintiff's loan constitute a "pattern or practice" of noncompliance with the requirements of 12 U.S.C § 2605.

100. Defendant's widespread violations with Plaintiff and other borrowers constitute a "pattern or practice" of noncompliance with the requirements of 12 U.S.C § 2605.

101. As a result of the conduct, actions and inactions of Defendant, Plaintiff suffered actual damages, including pecuniary and/or economic damage and emotional and mental distress.

102. Plaintiff's pecuniary and/or economic damages consisted of illegal charges, including approximately $30,000 in additional fees and prevention or hampering of resolving the debt issue

103. Plaintiff's emotional distress damages consisted fear of being illegally foreclosed upon, being confused and frustrated, depressed and other emotional and mental distress.

104. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages in an amount to be determined by the jury pursuant to 12 U.S.C. § 2605f(1)(A), statutory damages pursuant to 12 U.S.C. § 2605f(1)(B), costs and reasonable attorney's fees pursuant to 12 U.S.C. § 2605f(3).

**WHEREFORE**, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendant for Counts 1 - VI; for Plaintiff's attorney's fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

## CLASS CLAIMS FOR RELIEF

105. Plaintiff brings this claim on behalf of himself and all similarly situated borrowers in the State of Maryland who own real property that is secured by a mortgage that is serviced by PHH and received a Notice of Intent to Foreclose ("NOI") from PHH wherein the NOI represented that the loan could be accelerated, foreclosure commenced or the borrowers' ownership interest terminated by a date on which the loan could or would not be accelerated, no foreclosure could be commenced and the borrowers' ownership interest could not be terminated (see ¶¶ 17-18 supra).

106. Maryland law prohibits the filing of a foreclosure action before 45 days have elapsed from the date that the NOI was sent.

107. PHH sent the NOI on or after August 16, 2019.

108. 45 days from August 16, 2019 is September 30, 2019.

109. Consequently, no foreclosure action could be filed until September 30, 2019.

110. In the NOI, PHH represented that a foreclosure action could be filed on September 20, 2019, which was ten days before the right to foreclosure accrued.

111. No foreclosure was filed until June 22, 2020.

112. PHH had no intention to cause a foreclosure to be filed before September 30, 2019.

113. PHH had no right to cause a foreclosure to filed before September 30, 2019.

## CLASS ALLEGATIONS

114. Plaintiff incorporates paragraphs 101 – 109 by reference.

115. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class" or the "Class").

**A.    Numerosity.**

116. On information and belief, PHH sent a NOI with similar or identical language threatening to file a foreclosure prematurely to 40 or more borrowers.

117. The exact number of members of the Class are unknown and not available to Plaintiff at this time, but it is clear that the Class is so numerous that individual joinder is impracticable.

**B.    Typicality.**

118. Plaintiff's claims are typical of the claims of other members of the Putative Class.

119. On information and belief, PHH business records will show that they mailed NOI with similar or identical language threatening to prematurely foreclose to borrowers on behalf of multiple lenders. Therefore, by proving his case, the Plaintiff will simultaneously prove the case of the members of the Putative Class.

120. Further, Plaintiff's claims are typical of members of the Class because Plaintiff and members of the Class are entitled to statutory damages as result of PHH's conduct.

**C.    Commonality and Predominance.**

121. There are common questions of fact and law with the claims of Plaintiff and the Class.

122. These common questions of fact and law are whether PHH is a debt collector, whether the NOI were attempts to collect a debt, whether those communications violated the FDCPA, and whether class members are entitled to recover statutory and actual damages (and other relief) due to PHH's violations.

123. All of the foregoing issues are based on the same facts and legal theories for the Putative Class as for the Plaintiff. And these common questions of fact and law are subject to common proof through review of PHH's business records.

124. These common questions of fact and law are answerable for the entirety of the Class and will predominate over any questions that may affect individual members of the Class.

**D.    Superiority and Manageability.**

125. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

15

126. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution of PHH's unlawful collection activities.

127. Even if individual members of the Putative Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties and courts.

128. By contrast, a class action provides the benefits of single adjudication, economies of scale and comprehensive supervision by a single court.

129. Economies of effort, expense, and time will be fostered, and uniformity of decisions ensured. Whereas, individual litigation by class members could lead to inconsistent verdicts. And joinder of all parties is simply impracticable.

    **E.**    **Adequate Representation.**

130. Plaintiff will adequately and fairly represent and protect the interests of the Class.

131. Plaintiff has retained competent and experienced counsel in consumer litigation.

132. Plaintiff has no interests antagonistic to those of the Putative Class, and PHH has no defenses unique to Plaintiff.

### COUNT SEVEN: FDCPA CLASS CLAIM

133. Plaintiff incorporates paragraphs 105 – 132 by reference.

134. By sending a NOI to Plaintiff and members of the Putative Class, PHH violated 15 U.S.C. §§ 1692e, e(2), and e(10) by falsely representing that a foreclosure could be filed before the right to file a foreclosure had accrued.

135. As set forth above, Plaintiff can satisfy the elements of Fed. R. Civ. P. 23.

136. The Putative Classes are defined as follows:

## FDCPA CLASS

All natural persons who have a residential mortgage loan on their primary home located in the state of Maryland that PHH began servicing after the loan was declared in default (a) within the one (1) year prior to the filing of the original complaint and during its pendency (b) received a NOI from PHH (c) for purposes of collection upon a consumer debt (d) that threatened to accelerate the loan or file a foreclosure action or terminate the borrower's ownership interest in the property (e) prior to the elapse of 45-days of the date the NOI was sent.

## MCPA CLASS

All natural persons who have a residential mortgage loan on their primary home located in the state of Maryland that PHH serviced (a) within the three (3) year prior to the filing of the original complaint and during its pendency (b) received a NOI from PHH (c) for purposes of collection upon a consumer debt (d) that threatened to accelerate the loan or file a foreclosure action or terminate the borrower's ownership interest in the property (e) prior to the elapse of 45-days of the date the NOI was sent.

137. Class' members will be identified through discovery of PHH's business records.

138. Section 1692k of the FDCPA provides "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of –

    (1)    any actual damage sustained by such person as a result of such failure;

    (2)
        (B)    in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

    (3)    in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

**WHEREFORE**, Plaintiff, on behalf of members of the Class request the following relief:

A.     an order granting certification of the proposed class, including the designation of Plaintiff as the named representatives, the appointment of the undersigned as Class Counsel, under the applicable provisions of Fed. R. Civ. P. 23;

B. a finding that PHH violated 15 U.S.C. §§ 1692e(2) and e(10);

C. an order enjoining PHH from further violation(s) of 15 U.S.C. §§ 1692e(2) and e(10);

D. an award of such amount as the Court may allow for all other class members, not to exceed the lesser of $500,000 or 1 per centum of the net worth of PHH;

E. an award of costs of this action, together with reasonable attorneys' fees as determined by this Court; and

F. an award of such other relief as this Court deems just and proper.

## TRIAL BY JURY IS DEMANDED

139. Plaintiff demands a trial by jury of any and all issues triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff seeks a judgment against the Defendant for actual and/or statutory damages and punitive damages; an injunction, class certification, and for attorneys' fees and costs, and such other specific or general relief the Court does find just and appropriate.

Respectfully submitted,

**BERNARD LEWIS**

/s/ *Jeffrey W. Styles*
Jeffrey W. Styles, Esq., Bar. 20659
Washington Legal Group, LLC
1666 K Street, NW, Suite #440
Washington, District of Columbia 20006
Tel: (202) 503-1708
Email: jstyles@washlegal.com

*Attorney for Plaintiff*